IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FERNANDO MILLSAP,

Plaintiff, No. CIV S-10-2008 EFB P

vs.

MATTHEW CATE, et al.,

Defendants. ORDER AND FINDINGS AND RECOMMENDATIONS

_______________________________/

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. Defendants move to dismiss for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). For the reasons explained below, defendants' motion to dismiss must be denied.

**I. Facts**

This action proceeds on the July 28, 2010, complaint, in which plaintiff claims that defendants violated his Eighth Amendment rights. Plaintiff alleges that he was assigned to the upper bunk of a double-cell at CSP Sacramento that was originally designed to hold only one inmate. The upper bunk is placed approximately 5.5 feet above the floor. Inmates ascend to and descend from the upper bunk by means of a metal desk stool on the wall opposite the bunks. The stool is welded to the wall. The stool is 3-4 feet away from the bunk and is about 1.5 feet

above the ground. According to plaintiff, to get to the upper bunk, an inmate must step onto the stool and then move or jump three feet across and four feet up onto the upper bunk. On the way down, an inmate must jump four feet down onto steel.

Plaintiff alleges that he was injured trying to ascend to the upper bunk on November 16, 2009. He says that the stool collapsed while he was standing on it, causing him to fall backwards on the desk and then onto the floor. Plaintiff was transported to medical where doctors determined that he had suffered multiple muscle contusions and swelling of his rib cage.

Maintenance staff Byron Harris came a few days later to repair the stool. He told plaintiff that the original weld of the stool had failed to make complete contact with the back plate from the stool joint, and the weld had become weak over time.

Plaintiff alleges that defendants had been made aware of the unsafe conditions that resulted in his injury. He attaches a copy of another inmate's internal appeal, which was denied at the Director's Level on October 26, 2009. Compl., Ex. E. The other inmate, Harrison Scott, complained that climbing up and jumping down from his upper bunk was unsafe and exposed him to injury. He asked that ladders be installed in the cells. The appeal was denied at the Director's Level by N. Grannis, and copies of the denial were sent to the prison's Warden and Appeals Coordinator.

**II. Standards on Motion to Dismiss**

In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The complaint's factual allegations are accepted as true. *Church of Scientology of Cal. v. Flynn*, 744 F.2d 694, 696 (9th Cir. 1984). The court construes the pleading in the light most

favorable to plaintiff and resolves all doubts in plaintiff's favor. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Pro se pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

**III. Analysis**

Defendants argue that plaintiff has not pled facts showing that defendants violated his Eighth Amendment rights "by failing to maintain in good repair, and prevent the collapse of, the step stool used by Millsap to access the upper bunk." Mot. at 3. Defendants also argue that they are entitled to qualified immunity. *Id.* at 7-9.

A prison official violates the Eighth Amendment's proscription of cruel and unusual punishment where he or she deprives a prisoner of the minimal civilized measure of life's necessities with a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834, (1994). A prisoner must allege facts showing that (1) the defendant prison official's conduct deprived him or her of the minimal civilized measure of life's necessities and (2) that the defendant acted with deliberate indifference to the prisoner's health or safety. *Id.* at 834. To show deliberate indifference, the prisoner must allege that the defendant knew of and disregarded an excessive risk to inmate health or safety; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Defendants argue that plaintiff has not alleged that they knew that his stool had a poor weld and therefore posed a risk of substantial harm. Defendants focus narrowly on the broken stool as the sole cause of plaintiff's injuries. But defendants unduly narrow their statement of the nature of plaintiff's claim. Plaintiff claims that he was injured because his cell was constructed in such a way that necessitated a process of getting on and off of his bunk that was dangerous. Because the upper bunk was five feet above the floor and there was no way to get on or off of the bunk without jumping from the stool, the design of the cell itself posed a risk of substantial harm. *See* Pl's Opp'n at 8 ("Defendants['] failure to abolish practice of double

celling in cells that were originally designed for one occupant without the installment of a safety apparatus (i.e. a ladder) violate[s] the eighth amendment"). Although plaintiff's injury happened when his stool collapsed due to a faulty weld, the design of the cell itself is alleged to pose a substantial risk of harm to him and to be a cause of his injury.[1]

Defendants argue that they were not personally aware of the unsafe conditions in plaintiff's cell. Defendants may be liable under section 1983 if they (1) personally participated in the alleged deprivation of constitutional rights, (2) knew of the violations and failed to prevent them, or (3) promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citations and internal quotations omitted); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Here, plaintiff alleges that defendants were aware of the substantial risk posed by the design of the cell because of appeals submitted by other inmates who had been injured trying to get up or down from the upper bunk, but failed to prevent his injuries by correcting the unsafe design of the cell. Specifically, plaintiff attaches an appeal by inmate Scott, which was denied at the director's level before plaintiff was injured, complaining that climbing up and jumping down from his upper bunk was unsafe and exposed him to injury, and asking that ladders be installed in the cells. Dckt. No. 1, Ex. E.

////

[1] Indeed, a fair reading of the complaint shows that plaintiff's claim encompasses an alleged need to utilize an unsafe method of accessing the upper bunk (occassioned by using the cell in a manner for which it was not designed) combined with the weakening of a defective weld form repeated use of that method. Plaintiff claims that defendants were aware that inmates have to jump on their stools from five feet in the air, "thereby weakening its structural integrity," and that they provide no maintenance or inspection of the stools. Compl. at 8. Plaintiff also states that "upon information and belief that defendants were aware of the possibility of the stool failing based on numerous work orders issued for their repair and also because of the number of injuries suffered by inmates in these occurrences." *Id.* These allegations bolster plaintiff's claim that the design of the cell, including the use of the stool to ascend to the upper bunk, was dangerous.

Scott's appeal stated in part:

> Appellant argues that C.S.P Sac administrators are remiss in their duty to accommodate the occupant of the upper bunk by making provision for the installation of an apparatus designed to aid in an inmate's ascent to the upper bunk. The use of all upper bunks should be immediately abandoned as unsafe. Due to this fundamental flaw in the structural design of C.S.P Sac cells inmates are daily faced with the very real threat of serious injury. Inmates are forced to descend the upper bunk by "jumping" down onto an unforgiving concrete surface. The upper bunk is approximately five feet above the cell floor. The entire force and weight of the inmate's body is brought painfully to bear upon his lower extremities. The above named inmate (and others) have sustained multiple minor injuries as a direct result of the aforementioned structural deficiency; including but not limited to: bruising/ swelling upon the legs, arms, upper torso, hands and head. Custodial staff have repeatedly instructed petitioner to seek medical attention for his serious injuries, however, repeatedly being issued medications by medical practitioners for minor injuries does not adequately address the cause, i.e., the structural design problem!
>
> . . . inmates have a right to be free from the risk of serious harm. Familiar with the structural design of C.S.P. Sac cells as well as inmate concerns about [illegible] for prison official [illegible] the continued use–by inmates–of a 'stool' as a means to gain access to the upper bed–one which was not designed nor positioned for that purpose–demonstrates a deliberate indifference toward inmate safety. Further, assigning petitioner to a lower bunk does not resolve the issue of petitioner's existing injuries nor the risk of future injury to other inmates irrespective of existing medical condition or necessity.

*Id.* Plaintiff has plausibly alleged that defendants were aware of the unsafe condition of the cells, but disregarded the risk. *See* Compl. at 7 ("Plaintiff alleges the defendants were aware of the unsafe living conditions, policies, and practices that resulted in the plaintiff's injuries, because of numerous complaints, appeals, and serious injuries suffered by other inmates").

Defendants briefly argue that "there is no indication that either Virga or Cate were ever aware of inmate [Scott's] appeal." Mot. at 7. *See also* Reply at 3-4 ("Moreover, nothing in Millsap's complaint indicates that Defendants Cate or Virga saw or were otherwise made aware of Scott's complaint before Millsap fell. Therefore, the Court cannot plausibly infer that either of these Defendants was aware of Scott's general design complaints about ascending or descending from a cell's upper bunk in CSP-Sacramento."). But plaintiff asserts that other inmates' appeals regarding the dangerous cell design were "reviewed by each defendant's office." Opp'n at 8. The responses to inmate Scott's appeal, which is attached to plaintiff's

complaint, state "this matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation" (Cate) and that the decision was cc'd on "Warden, SAC" (Walker, at the time, although Virga was then Chief Deputy Warden). Compl., Ex. E at 28. One of the appeals is signed personally by defendant Walker. *Id.* at 35.

Plaintiff's allegations that inmate appeals regarding the danger of the cell design were processed by each defendants' office, and that each defendant was aware of similar internal appeals, is plausible and is sufficient to make out a claim that each defendant knew of the dangerous design of the cell and failed to correct it.[2] Defendants have not explained why it is implausible that the Director of CDCR, the Warden of CSP Sac, and the Chief Deputy Warden, whose offices processed inmate appeals on the subject, were aware that the cell design posed a substantial risk of harm, yet did nothing to remedy the situation. Plaintiff allegations are adequate to state a claim of deliberate indifference against defendants based on the structural design of the cell.

Defendants argue that they are entitled to qualified immunity because their conduct did not violate plaintiff's Eighth Amendment rights. In determining whether a governmental officer is immune from suit based on the doctrine of qualified immunity, the court considers two questions: 1) do the facts alleged show the officer's conduct violated a constitutional right; and 2) was the right clearly established? *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson v. Callahan*, 555 U.S. 223 (2009) (courts have discretion to decide which of the two *Saucier* prongs to address first). A plaintiff invokes a "clearly established" right when "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing is violating that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). For purposes of

[2] Defendants may also be liable for plaintiff's injuries regardless of whether they personally reviewed inmates' appeals if they promulgated or implemented a policy that is the moving force behind the eighth amendment violation of plaintiff's rights–that is, if they implemented the policy of not providing a safe method for inmates to ascend to the upper bunk, and the policy was the moving force behind plaintiff's injuries.

evaluating defendants' assertion of qualified immunity, the court must look at the facts in the light most favorable to plaintiff. *Saucier*, 533 U.S. at 201. Here, taking the facts in the light most favorable to plaintiff, defendants were aware that design of the cells posed a substantial risk of harm to plaintiff, but chose to ignore that risk. This was a violation of plaintiff's eighth amendment rights.

As to the second prong, an inmate's right to be free from bodily injury that serves no penological purpose has long been clearly established. *See Rhodes v. Chapman*, 452 U.S. 337, (1981) (the Eighth Amendment prohibits punishments which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain," and pain that is "totally without penological justification" is "unnecessary and wanton"); *Gregg v. Georgia*, 428 U.S. 153, 171 (1979) (same). *See also Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir. 1985) ("Persons involuntarily confined by the state have a constitutional right to safe conditions of confinement. Not every deviation from ideally safe conditions amounts to a constitutional violation. However, the Eighth Amendment entitles inmates in a penal institution to an adequate level of personal safety."). A reasonable person in the defendants' position would have understood that forcing inmates to jump five feet up and down onto steel and concrete surfaces posed a substantial risk that the inmates would be injured, and would therefore likely result in unnecessary infliction of pain without penological justification.

Defendants cite *Olinski v. Kane*, 92 F.3d 934, 938-39 (9th Cir. 1996) in support of their argument that they are entitled to qualified immunity. That case was brought by a prisoner who was burned when the door of an oven in the family visiting unit fell off of its hinges. The Ninth Circuit held that the prison officials were entitled to qualified immunity because the oven was "a single defective device, without any other conditions contributing to the threat to an inmates' safety." *Id.* Unlike the "single defective device" at issue in *Olinski*, the conditions plaintiff complains of are widespread throughout CSP-Sac; he and other inmates must cope with ascending and descending to and from their upper bunks daily. Moreover, plaintiff's allegations

are sufficient to plead notice and deliberate inaction to remedy the problem. If these facts are proven, defendants would not be shielded from liability by qualified immunity.

**IV. Conclusion**

For the above reasons, the court finds that plaintiff's allegations are sufficient to support an eighth amendment claim against defendants, and defendants are not entitled to qualified immunity.

Accordingly, it is hereby ORDERED that the Clerk randomly assign a United States District Judge to this case.

Further, it is hereby RECOMMENDED that defendants' motion to dismiss be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: September 1, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE