1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                           EASTERN DISTRICT OF CALIFORNIA

10

11  FERNANDO MILLSAP,                    No. 2:10-cv-02008-MCE-EFB

12            Plaintiff,

13       v.                             MEMORANDUM AND ORDER

14  MATTHEW CATE, et al.,

15            Defendants.

16

17                           ----oo0oo----

18       Plaintiff, a state prisoner proceeding pro se, has filed

19  this civil rights action against Mathew Cate, Director of the

20  California Department of Corrections and Rehabilitation, Tim

21  Virga, ex-Warden of the California State Prison-Sacramento

22  ("CSP-Sacramento"), and James Walker, current Warden of

23  CSP-Sacramento (collectively, "Defendants"), alleging that

24  Defendants violated Plaintiff's Eighth Amendment right for safe

25  conditions of confinement.  Defendants filed a Motion to Dismiss

26  Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure

27  12(b)(6).

28  ///

1

1   The matter was referred to a United States Magistrate Judge
2   pursuant to 28 U.S.C. § 636 (b)(1)(B) and Local Rule 302.   On
3   September 1, 2011, the Magistrate Judge filed findings and
4   recommendations, which were served on all parties and contained
5   notice to all parties that any objections were to be field within
6   fourteen days.   After the extension of time, Defendants filed
7   objections to the findings and recommendations.

8   In accordance with the provisions of 28 U.S.C. § 636
9   (b)(1)(c) and Local Rule 304, this Court has conducted a <u>de</u> <u>novo</u>
10  review of this case.   Having carefully reviewed the entire file,
11  the Court respectfully rejects Magistrate Judge's findings and
12  recommendations and grants Defendants' motion to dismiss.

13
14                          **BACKGROUND**
15

16  Defendants do not object to the factual background presented
17  in the findings and recommendations ("F & R"), but rather
18  challenge the legal conclusions reached by the Magistrate Judge.
19  Thus, the Court adopts the following facts as established by the
20  Magistrate Judge in his F & R.

21  Plaintiff alleges that he was assigned to the upper bunk of
22  a double-cell at CSP-Sacramento that was originally designed to
23  hold only one inmate.   The upper bunk is placed approximately
24  5.5 feet above the floor.   Inmates ascend to and descend from the
25  upper bunk by means of a metal desk stool on the wall opposite
26  the bunks.   The stool is welded to the wall.   The stool is
27  3-4 feet away from the bunk and is about 1.5 feet above the
28  ground.

1  According to Plaintiff, to get to the upper bunk, an inmate must
2  step onto the stool and then move or jump three feet across and
3  four feet up onto the upper bunk.  On the way down, an inmate
4  must jump four feet down onto steel.

5       Plaintiff alleges that he was injured trying to ascend to
6  the upper bunk on November 16, 2009.  He says that the stool
7  collapsed while he was standing on it, causing him to fall
8  backwards on the desk and then onto the floor.  Maintenance staff
9  Byron Harris, who came a few days later to repair the stool, told
10 Plaintiff that the stool's weld had become weak over time.  When
11 Plaintiff was transported to medical after the incident, doctors
12 determined that he had suffered multiple muscle contusions and
13 swelling to his rib cage.

14      Plaintiff alleges that Defendants had been made aware of the
15 unsafe conditions that resulted in his injury.  He attaches a
16 copy of another inmate's internal appeal, which was denied at the
17 Director's Level on October 26, 2009.  (Compl. Ex. E.)  The other
18 inmate, Harrison Scott, complained that climbing up and jumping
19 down from his upper bunk was unsafe and exposed him to injury.
20 Scott asked that ladders be installed in the cells.  The appeal
21 was denied at the Director's Level by N. Grannis, and copies of
22 the denial were sent to the prison's Warden and Appeals
23 Coordinator.
24 ///
25 ///
26 ///
27 ///
28 ///

3

**STANDARDS**

**A.    Standard under 28 U.S.C. § 636 (b)(1)**

The Court must conduct a de novo review of portions of the magistrate judge's findings and recommendations to which a party objects. 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 72(b)(3); U.S. v. Remsing, 874 F.2d 614, 618 (9th Cir. 1989).  The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations" made by the magistrate judge.  28 U.S.C. § 636(b)(1).  "If neither party contests the magistrate's findings of fact, the court may assume their correctness and decide the motion on the applicable law." Remsing, 874 F.2d at 617.

**B.    Standard under Rule 12(b)(6)**

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6),[1] all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant a fair notice of what the [. . .] claim is and the grounds upon which it rests.'"

///

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

1   Bell. Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting
2   Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A complaint attacked
3   by a Rule 12(b)(6) motion to dismiss does not require detailed
4   factual allegations.  Id.  However, "a plaintiff's obligation to
5   provide the grounds of his entitlement to relief requires more
6   than labels and conclusions, and a formulaic recitation of the
7   elements of a cause of action will not do."  Id.  (internal
8   citations and quotations omitted).  A court is not required to
9   accept as true a "legal conclusion couched as a factual
10  allegation."  Ashcroft v. Iqbal,129 S. Ct. 1937, 1950 (2009)
11  (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be
12  enough to raise a right to relief above the speculative level."
13  Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur
14  R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)
15  (stating that the pleading must contain something more than a
16  "statement of facts that merely creates a suspicion [of] a
17  legally cognizable right of action.")).

18      Furthermore, "Rule 8(a)(2) . . . requires a 'showing,'
19  rather than a blanket assertion, of entitlement to relief."
20  Twombly, 550 U.S. at 556 n.3 (internal citations and quotations
21  omitted).  "Without some factual allegation in the complaint, it
22  is hard to see how a claimant could satisfy the requirements of
23  providing not only 'fair notice' of the nature of the claim, but
24  also 'grounds' on which the claim rests."  Id.  (citing 5 Charles
25  Alan Wright & Arthur R. Miller, supra, at § 1202).  A pleading
26  must contain "only enough facts to state a claim to relief that
27  is plausible on its face."
28  ///

1   Id. at 570.  If the "plaintiffs . . . have not nudged their

2   claims across the line from conceivable to plausible, their

3   complaint must be dismissed."  Id.  However, "a well-pleaded

4   complaint may proceed even if it strikes a savvy judge that

5   actual proof of those facts is improbable, and 'that a recovery

6   is very remote and unlikely.'"  Id. at 556 (quoting Scheuer v.

7   Rhodes, 416 U.S. 232, 236 (1974)).

8        Pro se pleadings are held to a less stringent standard than

9   those drafted by lawyers.  Haines v. Kerner, 404 U.S. 519, 520-21

10  (1972). "In civil rights cases where the plaintiff appears

11  pro se, the court must construe the pleadings liberally and must

12  afford plaintiff the benefit of any doubt."  Karim-Panahi v.

13  Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988).

14  A court granting a motion to dismiss a complaint must then decide

15  whether to grant a leave to amend.  Leave to amend should be

16  "freely given" where there is no "undue delay, bad faith or

17  dilatory motive on the part of the movant, . . . undue prejudice

18  to the opposing party by virtue of allowance of the amendment,

19  [or] futility of the amendment . . . ."  Foman v. Davis, 371 U.S.

20  178, 182 (1962).  Dismissal without leave to amend is proper only

21  if it is clear that "the complaint could not be saved by any

22  amendment."  Intri-Plex Techs., Inc. v. Crest Group, Inc.,

23  499 F.3d 1048, 1056 (9th Cir. 2007).

24  ///

25  ///

26  ///

27  ///

28  ///

**ANALYSIS**

Plaintiff alleges that Defendants "acted with deliberate indifference in denying his right to the basic human need for safe and adequate living conditions and failing to maintain the structure of the living quarters as to ensure his safety." (Compl. ¶ 10.)  Plaintiff further alleges that Defendants were aware of the inmates' unsafe living conditions that resulted in the Plaintiff's injuries because of other inmates' complaints, appeals and serious injuries.  (Id. ¶ 12.)  Defendants contend that Plaintiff has not pled facts sufficiently showing that Defendants violated Plaintiff's Eighth Amendment rights "by failing to maintain in good repair, and prevent the collapse of, the step stool by [Plaintiff] to access the upper bunk".  (Defs.' Mot. at 3.)  Defendants also argue that they are entitled to qualified immunity. (Id. at 7-9.)

The Eighth Amendment's prohibition of cruel and unusual punishment requires that prison officials take reasonable measures for the safety of inmates.  Farmer v. Brennan, 511 U.S. 825, 832 (1994).  A prisoner claiming an Eighth Amendment violation has to demonstrate that: (1) the deprivation alleged is sufficiently serious (objective prong); and (2) the defendant acted with deliberate indifference to plaintiff's safety (subjective prong).  Id. at 834.  Under the test's objective prong, Plaintiff must demonstrate that prison officials' conduct deprived him of "the minimal civilized measure of life's necessities." Id.

///

7

In determining whether the alleged deprivation is objectively sufficiently serious, the Court must assess "whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwilling to such a risk." Neal v. Shimoda, 131 F.3d 818, 833 (9th Cir. 1997) (quoting Helling v. McKinney, 509 U.S. 25, 36 (1993)) (emphasis in the original).

To satisfy the test's subjective prong, Plaintiff must show that Defendants knew of and disregarded an excessive risk to his health or safety. Farmer, 511 U.S. at 837. In other words, the prison officials "must both be aware of facts from which the inference could be drawn that a substantial risk of the harm exists, and [they] must also draw the inference." Id.

The Magistrate Judge has concluded that Plaintiff sufficiently alleged a claim of deliberate indifference against Defendants because (1) the design of Plaintiff's prison cell posed a risk of substantial harm;[2] and (2) Defendants were aware of the danger of the cell design by virtue of processing Plaintiff's and other inmates' appeals complaining about the faulty design, but failed to correct it. (F & R at 3-6.)

///

///

///

///

---

[2] The Magistrate Judge specifically disagreed with Defendants' narrow focus on the broken stool as the sole cause of Plaintiff's injuries, and concluded that the proper inquiry is whether the design of the cell itself posed a risk of substantial harm. (F & R at 3-4.)

While the Court agrees with the Magistrate Judge that Defendants
improperly narrowed the focus of the inquiry to the broken stool
as a cause of Plaintiff's alleged constitutional deprivation, the
Court disagrees with the Magistrate Judge's conclusion that
Plaintiff's claim of dangerous cell design, even if viewed
liberally, states a viable claim for deliberate indifference.[3]

Even if afforded the most liberal interpretation,
Plaintiff's "structural design" claim boils down to Defendants'
alleged failure to install ladders or other "safety apparatus" to
assist Plaintiff and other inmates in getting on and off upper
bunks.  (See Compl. ¶¶ 13,18; Pl.'s Opp. at 8:15-19.)  Multiple
district courts in the Ninth Circuit have held that the failure
of prison officials to equip prison cells with a ladder or some
other "safety apparatus" to assist inmates in ascending to and
descending from bunk beds does not amount to the deprivation of
"a minimally civilized measure of life's necessities."

///

///

///

///

_____

[3] Although Defendants' motion to dismiss, which focuses
entirely on the broken stool as a cause of Plaintiff's injury,
does not address the sufficiency of Plaintiff's claim in light of
the "dangerous cell design" theory articulated by the Magistrate
Judge, the Court can review the sufficiency of Plaintiff's
complaint based upon the "dangerous cell design" theory and
dismiss the claim on this basis even if Defendants have not
analyzed this particular theory in their motion to dismiss.  See
28 U.S.C. § 1915(e)(2)(B)(ii) ("Notwithstanding any filing fee,
or any portion thereof, that may have been paid, the court shall
dismiss the case [brought by a prisoner proceeding in forma
pauperis] at any time if the court determines that . . . the
action or appeal . . . fails to state a claim upon which relief
may be granted.") (emphasis added).

1  See, e.g., Hiscox v. Martel, No. CIV S-10-0467 JAM CKD, 2011 WL

2  5241277, at **2-3 (E.D. Cal. Nov. 1, 2011) (dismissing prisoner's

3  complaint which alleged that the upper bunk was a "hazardous

4  condition" as it "lack[ed] grab-bars, rails, ladders and other

5  safety features," and explaining that "prison officials' failure

6  to provide a ladder or other safety features may not reasonably

7  be characterized as deliberate deprivation of a human need or as

8  a condition that placed plaintiff's health or welfare in imminent

9  danger"); Wiseman v. Cate, No. 1:10-cv-00024-OWW-SMS, 2011 WL

10 846208, at *2 (E.D. Cal. March 4, 2011) ("The failure to provide

11 bunk ladders is simply not a condition so grave that it deprives

12 Plaintiff of the minimal civilized measure of life's

13 necessities."); Robinett v. Correctional Training Facility,

14 No. C 09-3845 SI, 2010 WL 286 7696, at **2-3 (N.D. Cal. July 20,

15 2010 ("Requiring an able-bodied inmate to use a bunk bed with two

16 climbing steps without a ladder or handrail does not deny him the

17 minimal civilized measure of life's necessities.").

18     Federal courts in other circuits also "universally espouse

19 the view that ladderless bunk is not a sufficiently unsafe living

20 condition warranting Eighth Amendment protection." Jenkins v.

21 Fischer, No. 9:08-CV-0045, 2010 WL 6230517, at *5 (N.D.N.Y.

22 Sept. 8, 2010); see also Connolly v. County of Suffolk,

23 533 F. Supp. 2d 236, 241 (D. Mass. 2008) (holding that absence of

24 ladders for bunk beds does not amount to the deprivation of "a

25 minimal civilized measure of life's necessities");

26 ///

27 ///

28 ///

1  <u>Armstrong v. Terrebonne Parish Sheriff</u>, No. 06-573, 2006 WL
2  1968887, at **1,6 (E.D. La. June 6, 2006) (holding that the U.S.
3  Constitution does not require ladders for bunk beds, and that a
4  swivel chair and table to step on provided "[a] reasonable means
5  of getting into the top bunk, if the inmate would have taken
6  reasonable care for his own safety"); <u>Wilson v. State</u>, No. Civ.
7  A. 7:00-cv-00966, 2002 WL 31499736, at *7 (W.D. Va. May 6, 2002)
8  (holding that, notwithstanding plaintiff's diagnosed knee
9  condition and complaint of prior falls, "the lack of ladders
10 . . . in the jail cells does not constitute a dangerous condition
11 in and of itself"); <u>McDaniel v. Walsh</u>, No. 09-2170, 2011 WL
12 489787, at *5 (C.D. Ill. Feb. 7, 2011) ("A ladder to the
13 upper/top bunk is not one of life's necessities and therefore
14 Plaintiff fails to satisfy the objective component applicable to
15 his claim.  Inmates and pretrial detainees are not
16 constitutionally guaranteed a ladder to an upper bunk.").

17      This Court similarly concludes that Defendants' alleged
18 failure to provide Plaintiff and other inmates with "safety
19 apparatus" to access top bunks does not violate "contemporary
20 standards of decency" to amount to cruel and unusual punishment
21 under the Eighth Amendment.  <u>See</u> <u>Neal v. Shimoda</u>, 131 F.3d at
22 833.  Plaintiff has failed to present any facts to demonstrate
23 otherwise.  Nothing in the Complaint suggests that Plaintiff had
24 any difficulties getting on and off the top bunk until the
25 alleged incident.
26 ///
27 ///
28 ///

1   Although Plaintiff generally blames the dangerous cell design for

2   his injury, Plaintiff acknowledges that he fell because the stool

3   collapsed underneath him, and not because the stool was located

4   too far or too low to allow Plaintiff's access to his bunk.

5   Moreover, the Complaint does not plausibly demonstrate that

6   Plaintiff could not use some alternative means of ascending and

7   descending, e.g., pulling himself up to climb onto his bunk and

8   easing himself down, or using the lower bunk to assist him in

9   accessing the top bunk.  Short of conclusory statements about

10  inherent dangers of ladderless bunk beds, which were found

11  insufficient to state an Eighth Amendment claim by numerous

12  courts across the country, the Complaint is devoid of any facts

13  plausibly demonstrating that the absence of ladders or other

14  safety devices deprived Plaintiff of "the minimal civilized

15  measure of life's necessities."  See Farmer, 511 U.S. at 834.

16      Accordingly, even if the Court agrees with the Magistrate

17  Judge's conclusion that Defendants were aware of the "danger" of

18  Plaintiff's cell design, Plaintiff's claim fails under the

19  objective prong of the Eighth Amendment's test.

20      Further, the Court disagrees with the Magistrate Judge's

21  conclusion that Defendants are not entitled to qualified

22  immunity.  "[G]overnment officials performing discretionary

23  functions are shielded from liability for civil damages insofar

24  as their conduct does not violate clearly established statutory

25  or constitutional rights of which a reasonable person would have

26  known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

27  ///

28  ///

12

1   Courts have "discretion to grant qualified immunity on the basis

2   of the 'clearly established' prong alone, without deciding in the

3   first instance whether any right has been violated." <u>James v.</u>

4   <u>Rowlands</u>, 606 F.3d 646, 651 (9th Cir. 2010) (citing <u>Pearson v.</u>

5   <u>Callahan</u>, 555 U.S. 223, 236 (2009)).  "For a constitutional right

6   to be clearly established, its contours must be sufficiently

7   clear that a reasonable official would understand that what he

8   was doing violated that right." <u>Hope v. Pelzer</u>, 536 U.S. 730,

9   739 (2002).  The court should undertake this inquiry in light of

10  the <u>specific context of the case</u>, and not as a broad general

11  proposition.  <u>Anderson v. Creighton</u>, 483 U.S. 635, 639 (1987);

12  <u>Baker v. Racansky</u>, 887 F.2d 183, 186 (9th Cir. 1989).

13      The Magistrate Judge concluded that Defendants are not

14  entitled to qualified immunity in light of Plaintiff's clearly

15  established constitutional right to be free from bodily injury

16  that serves no penological purpose. (F & R at 7.)  By focusing

17  his inquiry on such a broad constitutional principle, the

18  Magistrate Judge has failed to conduct a particularized inquiry

19  into the applicability of qualified immunity in the context of

20  the specific facts of the case at issue. <u>See</u> <u>Anderson</u>, 483 U.S.

21  at 639; <u>Baker</u>, 887 F.2d at 186.  The Supreme Court explained:

22      The operation of [the qualified immunity] standard
        . . . depends substantially upon the level of
23      generality at which the relevant "legal rule" is to be
        identified.  For example, the right to due process of
24      law is quite clearly established by the Due Process
        Clause, and thus there is a sense in which any action
25      that violates that Clause (no matter how unclear it may
        be that the particular action is a violation) violates
26      a clearly established right.  Much the same could be
        said of any other constitutional or statutory
27      violation.

28  ///

13

But if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" . . . . Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights. . . . It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense . . . . This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, . . . but it is to say that <u>in the light of pre-existing law</u> the unlawfulness must be apparent.

<u>Anderson</u>, 483 U.S. at 639 (emphasis added).

The gravamen of Plaintiff's complaint is that Defendants participated in the decision not to equip bunk beds in prison cells with a "safety apparatus." Thus, the inquiry for the Court is whether it is clearly established that top bunks not equipped with ladders or other safety features pose a substantial risk of serious harm that society would consider so grave as to amount to an Eighth Amendment's violation. The Court answers this question in the negative. In light of an almost universal judicial recognition that the absence of ladders or other safety devices in prison cells with bunk beds does not present a sufficiently unsafe condition of confinement, the Court cannot find that the unlawfulness of ladderless bunk beds in prison cells is apparent. Accordingly, the Court cannot conclude that a reasonable officer would believe that his decision to refuse Plaintiff's request for a ladder or other "safety apparatus" was in violation of Plaintiff's clearly established constitutional right. Thus, Defendants are entitled to qualified immunity.

///

1    Accordingly, the Court grants Defendants' Motion to Dismiss
2 with leave to amend.

3

4                              **CONCLUSION**

5

6    For the reasons set forth above, the Court respectfully
7 rejects the Magistrate Judge's findings and recommendations and
8 GRANTS Defendants' Motion to Dismiss Plaintiff's Complaint with
9 leave to amend.  Any amended pleading consistent with the terms
10 of this Memorandum and Order must be filed not later than twenty
11 (20) days following the date of this Memorandum and Order.
12    IT IS SO ORDERED.
13
   Dated: March 27, 2012
14
15
16                              MORRISON C. ENGLAND, JR.
17                              UNITED STATES DISTRICT JUDGE
18
19
20
21
22
23
24
25
26
27
28

                                15